```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                        GREENBELT DIVISION


_____
                             )
UNITED STATES OF AMERICA,     )
                             )
        Plaintiff,           )
                             )Docket Number
            vs.              )8:21-cr-460
                             )
SAMUEL SULLIVAN, JR.,        )
                             )
        Defendant.           )
_____)
```

```
              TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE THEODORE CHUANG
           UNITED STATES DISTRICT COURT JUDGE
         WEDNESDAY, SEPTEMBER 20, 2023, AT 3:30 P.M.
```

APPEARANCES:

On Behalf of the Plaintiff:

        GARY MICHAEL MORGAN, JR. , ESQ.
        Jared Engelking, ESQ.
        US Attorneys' Office
        6500 Cherrywood Lane, Suite 200
        Greenbelt, MD 20770
        301-344-4516


On Behalf of the Defendant:

        MICHAEL EDWARD LAWLOR, ESQ.
        []Houlon, Berman, Finci & Levenstein, LLC[]
        []
        Miami, FL 33131

```
              KATHY CORTOPASSI, RDR, CRR, CRC
                   Official Court Reporter
         United States District Court, Greenbelt, Maryland
```

```
        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
```

1    THE COURT:  Thank you, everyone.  Please be seated.

2    THE CLERK:  The matters now pending before this

3  court are criminal action numbers TDC-21-0460 and

4  TDC-10-0223, United States of America versus Samuel Sullivan,

5  Jr.

6    We are here today for the purpose of a sentencing

7  hearing and a violation of supervised release hearing.

8    Counsel, please identify yourselves for the record.

9    MR. MORGAN:  Good afternoon, Your Honor.  Michael

10  Morgan on behalf of the United States.

11    THE COURT:  Good afternoon.

12    MR. LAWLOR:  Good afternoon, Your Honor, Michael

13  Lawlor and Adam Demetriou on behalf of Mr. Sullivan, who is

14  seated to my right, Your Honor.

15    THE COURT:  Good afternoon.  And good afternoon to

16  Mr. Sullivan.

17    DEFENDANT:  Good afternoon, Your Honor.

18    THE COURT:  We are here for a sentencing, United

19  States versus Sullivan.  Mr. Sullivan has pleaded guilty to

20  Count One, bank robbery, in violation of 18 U.S.C. Section

21  2113(a), Count Four, interference with interstate commerce by

22  robbery, in violation of 18 U.S.C. Section 1951(a), Count

23  Five, using, carrying, and brandishing a firearm during and

24  in relation to a crime of violence, in violation of 18

25  U.S.C. Section 924(c) and Count Six, attempted interference

1  with interstate commerce by robbery, in violation of 18

2  U.S.C. Section 1951(a).

3          Mr. Sullivan has also pleaded guilty to violation

4  numbers 1 and 2 of the petition for a violation of supervised

5  release for committing a federal, state, or local crime, and

6  violation number 3 for possessing a firearm.

7          And I've received and reviewed the following

8  documents in connection with today's proceedings:  The

9  presentence report which is ECF number 70; the Government's

10  sentencing memorandum with victim impact statements, which is

11  ECF1380; the defendant's sentencing memorandum, which is

12  ECF 78; and a motion for forfeiture, which is ECF 67.

13          Is there anything else I should have received?

14          MR. MORGAN:  Not from the Government, thank you.

15          MR. LAWLOR:  Likewise, Your Honor.

16          THE COURT:  Okay.

17          So, Mr. Lawlor, I have received and reviewed the

18  presentence report.  Have you and your client had the

19  opportunity to do so?  And do you have any remaining

20  objections to it?

21          MR. LAWLOR:  Your Honor, we have.

22          THE COURT:  Can you just pull the microphone up.

23  It's in the wrong spot.

24          MR. LAWLOR:  Sorry.

25          THE COURT:  Thank you.

1          MR. LAWLOR:  We have reviewed the report, and there
2  are no remaining objections.

3          THE COURT:  Okay.

4          So, I've reviewed the calculations of offense level
5  and criminal history and find them to be accurate.

6          The total offense level on Counts One, Four and Six
7  is 31.  The criminal history category is 3.  So, the
8  guideline range is 135 to 168 months on Counts One, Four and
9  Six.  On Count Five, there's the mandatory minimum sentence.
10  The guideline range, which is consecutive, and then the
11  guideline range for supervised release is one to three years
12  on Counts One, Four, and Six; two to five years on Count
13  Five.  The guideline range for a fine is $30,000 to $300,000.
14  And the special assessment is $400.

15          On the violation of supervised release, the
16  guideline range is 30 to 37 months because the defendant was
17  on release for a Class A felony, and his underlying criminal
18  history category was 3.

19          Any objections to the violation of supervised
20  release calculations?

21          MR. MORGAN:  No, thank you.

22          MR. LAWLOR:  No, Your Honor.

23          THE COURT:  So, next I wanted to see if we should
24  move to the sealed session of the proceedings, Mr. Morgan; is
25  that appropriate?

1        MR. MORGAN:  Yes, Your Honor.  Thank you.

2        THE COURT:  Okay.  So is everyone in the courtroom

3   a part of either team?

4        MR. MORGAN:  Yes, Your Honor.

5        THE COURT:  I will ask the Court security officer

6   just to seal the courtroom, make sure no one else enters

7   during the sealed session.

8            (It is the policy of this court that every guilty

9   plea and sentencing proceeding include a bench conference

10  concerning whether the defendant is or is not cooperating.)

11       THE COURT:  Okay.  So we can go back to the open

12  session, meaning that if anyone wants to come in, they can.

13  So, now that we can move on to the general recommendations,

14  we'll start with the Government, then we'll hear from

15  Mr. Lawlor; and then if you would like to, we'll hear from

16  Mr. Sullivan.

17       MR. MORGAN:  Thank you, Your Honor.

18       Your Honor, it took Mr. Sullivan less than two

19  months after his release from his previous armed bank robbery

20  to begin another series of bank robberies.  I believe he was

21  released on February 22, 2021, and the first robbery occurred

22  on April 17, 2021.  13 years that he got before was

23  insufficient, unfortunately for him and unfortunately for the

24  community.  That was on one robbery.  One count of the armed

25  robbery and one count of the 924(c).

1          He's before Your Honor with six different robberies
2    or armed robberies now.  Over and over and over and over
3    again, he decided to arm himself, go into banks or places of
4    business, threaten people, brandish a weapon, shoot somebody
5    in the leg, hit a woman in the head with a pistol, and steal
6    money.

7          It's remarkable that he was before a court in this
8    district or this court and he -- not before this court but in
9    this district -- he sat here and had a proceeding like this
10   with another federal judge, got 13 years, and still decided,
11   in that short amount of time of two months, to go at it
12   again.

13         A sentence that's significantly higher than 13
14   years is required here.  If we were here just for one bank
15   robbery, he would need a sentence that's significantly higher
16   than 13 years in order to be sufficient, not greater than
17   necessary, to meet the goals of sentencing.

18         If he were on two, we'd have even more.

19         But we're here on now six, either completed or
20   attempted.  And because he's here all together on six, he
21   shouldn't get a bulk discount of some sort.  It's factored in
22   with the units into the guidelines, and so I know it takes it
23   into consideration, but we're talking about six different
24   banks or businesses with six sets of victims who were either
25   traumatized emotionally and mentally or physically.

1        I know Your Honor has received and has considered

2   the victim impact statements.  I think they're very

3   impactful, and the damage that this defendant caused is

4   significant.  Shooting someone in the leg can kill them.

5   That's what you intend to do when you fire a weapon, is you

6   intend to kill the person.  Or, at a minimum, seriously maim

7   and injure the person.  But you have the risk every time of

8   killing them, intentionally or not.

9        Thankfully, it is just a leg wound that will have

10  ripple effects throughout his entire life.

11       Likewise, in all of the other robberies or

12  attempted robberies where he's brandishing weapons and

13  threatening people and stealing money, that's inherently

14  dangerous activity, as well, even though he didn't fire shots

15  in those others.  He could have caused additional injuries to

16  not only the employees of the bank but also the public.

17       He needs a sentence that will sufficiently deter

18  him from ever engaging in this kind of activity again.

19       You don't rob a bank by accident.  You don't rob a

20  convenience store by accident.  It was thought out, and he

21  did it, time and time again.

22       He just simply wasn't deterred.

23       Your Honor, there's -- a 35-year sentence would

24  reflect the seriousness of the crimes that he committed.  It

25  would also take into account the nature and circumstances of

1    the defendant's criminal history.  He had a criminal history

2    prior to even the past armed robbery of a bank.

3              And I think that there's specific deterrence here,

4    of course.  That is of utmost concern here because he has

5    shown, for whatever reason, a willingness to do this

6    regardless of the consequences.  It wasn't like he was

7    ignorant of what might happen.

8              And so he must be specifically deterred.  And,

9    likewise, general deterrence is of significant consideration,

10   as well, that the public know that when an individual commits

11   crimes like these, that there's a severe and appropriate

12   punishment that will await them so that they are deterred

13   from committing any crime anywhere near as similar as to what

14   Mr. Sullivan engaged in, especially someone who has already

15   committed that very same crime.

16             And so I think general deterrence is also very

17   important.

18             But above all, I think that protection of the

19   public from Mr. Sullivan is critical here.  And I think that

20   35 years is sufficient, but not greater than necessary, to

21   accomplish those goals.  I would ask that the Court impose 35

22   years.

23             I would ask that the Court order restitution.

24   There was a modification of the amount.  But the parties have

25   agreed that it's $30,894.

 1          And followed by five years of supervised release as
 2   well as the special assessments.  Thank you, Your Honor.
 3          THE COURT:  Thank you.  I forgot to ask, just to
 4   confirm, I mean, were the known victims made aware of the
 5   proceedings?  Some of them did submit written statements, but
 6   was everyone given the opportunity to either submit something
 7   in writing or to appear today if they wanted to?
 8          MR. MORGAN:  Yes, Your Honor.  They were given the
 9   opportunity to do both.  They chose to submit victim impact
10   statements.
11          THE COURT:  Thank you.
12          Mr. Lawlor?
13          MR. LAWLOR:  Thank you, Your Honor.
14          Your Honor, I do have, sadly, more statistics I
15   could throw at the Court about other sentences imposed in
16   this district and nationally.  Hobbs Act cases and Hobbs Act
17   cases with a criminal history category 3, Hobbs Act cases
18   with a 924(c).  But I think I'm going to spare the Court
19   that --
20          THE COURT:  Maybe, do you have any?  I'm not saying
21   again I'm going to focus on this, but what's somewhat unique
22   about this case, not unique, but probably sets it apart from
23   the usual case is the consecutive 924(c)s, one right after
24   the other that leads to this 25-year number that obviously is
25   a factor to consider.  So, that's one big difference.

1          And I don't know if you've seen that scenario
2   because I think that's what sets this apart from some of the
3   other cases.
4          MR. LAWLOR:  No.
5          THE COURT:  And of course the number of incidents
6   as Mr. Morgan referenced.  Not every case has that number of
7   incident.
8          MR. LAWLOR:  Let me start there, of course, that
9   Mr. Morgan is 100 percent correct, that no one wants to be
10  robbed.
11         And it's not the theft of someone's articles or
12  property here that's the concern; it's the presence of a
13  handgun and the fear, you know, that is put upon someone.
14  Then, of course, you know, the actual violence here.
15         But I do think the 25-year mandatory sentence
16  throws the range of punishment so out of whack from what we'd
17  normally see even in a case with somebody who has a criminal
18  history like Mr. Sullivan's.
19         So I do have, Your Honor, during the last five
20  fiscal years, there were nine defendants whose primary
21  guideline was 2B3.1 and were convicted of at least one count
22  of 924(c) with a final offense level of 31 and a criminal
23  history category of 3.
24         After excluding defendants who received a 5K-1.1
25  departure, the average length of sentence was 284 months and

the medium length of sentence was 264 months.  And I guess since you suggested I was not on poor ground to throw more statistics at the Court, in robbery cases, the mean sentence for people who received the 5K-1.1 was 70 months.  In murder cases, 68 cooperation cases total -- this is nationally -- the mean sentence imposed was 132 months.

And, you know, the point we've all made here and I think we can agree on is that these statistics are helpful only to a degree.

But I do believe what these reflect is that a sentence of 35 years is far out of line -- and obviously the Court is concerned and is required to consider the need to avoid unwanted sentencing disparity.

And so I only offer these statistics up because I do believe that the sentence recommended by the Government is just so terrifically out of line with sentences that I've seen, be it attempted murder where you have a shooting, felon who have prior gun convictions.

And so I do believe, Your Honor, that the sentence that we're recommending of 17 years is consistent with sentences that have been imposed in other cases.

But, your Honor, of course, again, what Mr. Morgan indicates is that Mr. Sullivan has, you know, demonstrated here on two occasions to be a concern to the general safety of the public.

1        And what you see in this case is what we see in too

2   many cases is that Mr. Sullivan has an awful drug and alcohol

3   problem.

4        You know, there's no good excuse for leaving prison

5   and beginning to commit crimes two months later, but I

6   believe that, you know, that narrative ignores the fact that

7   Mr. Sullivan is somebody with a horrible drug problem.  And

8   no one -- no one is sober and wants to start using again.  No

9   one leaves jail sober and wants to start using again.

10  Everybody has gotten sober once wants to stay sober.

11       And Mr. Sullivan, unfortunately, is a person who

12  has a certain constellation of issues:  Mental health

13  problems and depression and a drug addiction.  And he fell,

14  upon release, to the street and then drug addiction.

15       Because, again, Your Honor, these crimes are --

16  these aren't somebody who's looking for money.  I mean, they

17  scream out of the sort of foolish crime of someone going into

18  a 7-Eleven or a similar place and deciding that whatever

19  small change that they can get from that establishment will

20  lead to the ability to score more drugs.  And that's what

21  happened to Mr. Sullivan here.

22       And I know that in all of my conversations with him

23  that, you know, not only is Mr. Sullivan remorseful, but

24  there's this, you know, there's this -- I don't want to say

25  self-hatred, that's a little bit too strong, but there's this

1   realization for Mr. Sullivan that he got released from

2   prison, he has six children, he wanted to do well -- because,

3   again, no one wants to get out of jail and fail and be right

4   back in the system.

5        And so Mr. Sullivan knows that most importantly he

6   failed himself.  He failed his children.  And now he's

7   looking at, under any set of circumstances, an exceedingly

8   long sentence.

9        But, Your Honor, what I'm asking the Court to do

10   here is consider -- and, of course, like I said, any

11   sentence, even if the Court imposes sentence at the bottom of

12   the C plea range, is going to be a sentence that requires

13   Mr. Sullivan to be in jail for a significant period of time.

14        But I'd ask the Court to be guided in part by the

15   fact that Mr. Sullivan is now 49.  And so if he receives a

16   17-year prison sentence, he will be in his 60s if he's

17   released.  If he received a 35-year sentence, he might get

18   released when he's 79, which is nine years past the average

19   life expectancy for an African-American in America, never

20   mind one who lives in the Bureau of Prisons.

21        So a 35-year sentence is practically a life

22   sentence, Your Honor.  And I believe that a 17-year sentence,

23   Your Honor, is deterrence.  It is a significant period of

24   time and, therefore, is significantly punitive to

25   Mr. Sullivan.

1          But the truth of the matter is, Your Honor, what I
2  hope, I'm sure what the Court hopes and what the Court
3  sentences I'm sure will have to reflect is a certainty that
4  when Mr. Sullivan is released from prison, that the citizens
5  of whatever locality he resides in are safe, and I do believe
6  that that sentence of 17 years, considering the age that he
7  will be when he's released and then the combined amount of
8  time that he will sit incarcerated minus two months will, I
9  hope, give him the tools that he needs to get out as a senior
10 citizen.

11         You know, again, we're not talking about someone
12 who's looking -- who's hoping to thrive in society.  We're
13 just looking for someone here who can live in society and do
14 well enough for himself to stay out of prison.

15         But I do believe that the length of sentence at the
16 bottom of this range, given all of the things that we've
17 presented to the Court today, including Mr. Sullivan's age
18 and his drug and mental health issues, suggests that a
19 sentence at the lower end of this range is a reasonable one.

20         And, Your Honor, just for the last piece of math I
21 will, you know, throw at the Court, bearing in mind that
22 the -- bearing in mind that the sentence for the
23 non-mandatory sentence include a seven-level bump for the gun
24 and the four-level bump for causing significant injury, but
25 if you consider 135 months, 11 years, and added 10 years,

1   which is the mandatory minimum when it's not a subsequent

2   offender, but just for discharge, that would call for a

3   21-year sentence before the Court considered other factors.

4            And so, again, Your Honor, you know, I don't want

5   to apologize for throwing these numbers at the Court, but I

6   hope the Court can see that what I'm trying to do is give the

7   sentence that we're suggesting some basis in fact, that it's

8   not just a number; that it is tied to not only the

9   guidelines, but sentences that are imposed in other cases

10  with at least some like circumstances.  And I do believe that

11  the sentence at the low end of this range would reflect that,

12  Your Honor.  And that's our request.

13           THE COURT:  Thank you.

14           Any proposed recommendations for the Bureau of

15  Prisons?

16           MR. LAWLOR:  Yes, Your Honor.  The Federal Medical

17  Center in Fort Worth, Texas, or MCFP, which is also Medical

18  Center in Springfield, Missouri, or, finally, Your Honor, the

19  FMC in Lexington, Kentucky.

20           THE COURT:  Okay.  So, Mr. Sullivan, you have an

21  opportunity, if you would like to, to make a statement now

22  before the Court issues the sentence.  If you'd like to, now

23  is your opportunity.

24           DEFENDANT:  Could I have the Court's indulgence for

25  a moment?

```
 1              THE COURT:  Sure.
 2              DEFENDANT:  Good afternoon, Your Honor.
 3              THE COURT:  Good afternoon.
 4              DEFENDANT:  I'm ashamed for what I did.  And I'm
 5    sorry.
 6              (Crying.)
 7              I messed up.  And I don't know what came over me.
 8    I did all that time thinking I was going to do right.  I
 9    don't know where I went wrong at.  I had this woman and I got
10    six daughters.  I can't even remember what I did, Your Honor.
11              Right now, Your Honor, you're like God to me, Your
12    Honor.  I beg for you to give me another chance.  I'm not
13    no -- I don't want no -- I just don't know why I did them
14    things.  I'm so sorry for hurting people.  I didn't want to
15    do that.  I didn't mean to shoot that man in the leg.  I wish
16    he was here.  I pray for him every day.  I don't know how I
17    messed up, Your Honor.  I don't know.  I'm sorry.
18              I could be a better person.  I'm better than that.
19    My life is turned upside down, like I have people wanting me
20    dead.  My daughters don't want to bother with me.  It's just
21    a mess.  And I'm just asking for the Court to believe that I
22    could be better and give me some mental health treatment.
23    And because I need it.  And I never break the law again if I
24    get another chance.  Just please have mercy on me, Your
25    Honor.  Thank you.
```

1          THE COURT:  Thank you, Mr. Sullivan.

2          In considering the appropriate sentence for

3  Mr. Sullivan, I considered the advisory guideline range and

4  all the factors in 18 U.S.C. Section 3553(a).  I've also

5  considered Congress's direction that the sentenced imposed be

6  sufficient, but not greater than necessary, to comply with

7  the purposes of sentencing.  And I've considered the terms of

8  the plea agreement, as well.

9          Now, this is -- on the nature and circumstances of

10 the offense, this is a case involving a series of robberies,

11 three bank robberies with a threat of death, a Hobbs Act

12 robbery with the brandishing of a gun, an attempted robbery

13 with a discharge of a firearm that injured someone, and

14 actually was a shooting of that person, and another attempted

15 robbery with a brandishing of a gun.  In all this, another

16 person was physically struck with a firearm and was injured.

17         All of these are extremely serious offenses on

18 their own.  Collectively, it is outrageous and unacceptable

19 conduct.

20         Certainly just on the facts themselves, these

21 crimes call for at least a high-end sentence just on the

22 nature and circumstances of the offense.

23         As for the history and characteristics of the

24 defendant, though he does not have a lengthy criminal record,

25 he has a prior federal conviction for the same combination of

1 an armed robbery and a 924(c) conviction that resulted in a

2 total sentence of 13 years.

3 Very soon after that release, Mr. Sullivan

4 committed these offenses.  That sequence is also highly

5 troubling because it shows no rehabilitation at all during

6 that time period, at least not by the end.  And it's also an

7 aggravating factor.

8 Now, the defendant does have a history of mental

9 health and substance abuse issues.  And the drug use and the

10 mental health issues very well may have contributed to these

11 crimes.  But after close to 13 years in prison with ample

12 opportunities to address those issues, and with no results,

13 those factors, while they are certainly mitigating, can only

14 take us so far.

15 Certainly, the defendant has family circumstances

16 that arguably could have warranted some leniency; but, again,

17 it's much harder to give that on a second time going through

18 this exact same series of events and with the number of

19 robberies in place.

20 Now, considering all the factors, the Court will

21 sentence the defendant to a total term on Counts One, Four,

22 Five, and Six of 252 months, all to run concurrently -- I'm

23 sorry.  252 months total, broken down with 14 -- 168 months

24 on Counts One, Four, and Six, which is the high end of the

25 guideline range on those offenses to reflect the seriousness

1   of the series of offenses, and then an 84-month consecutive

2   sentence on Count Five for a total on those counts of 252

3   months.

4        I will also include a 36-month sentence to run

5   consecutively on the violation of supervised release.

6        Based on this overall sentence, the defendant is

7   effectively being treated as if there was not -- that this

8   was a standard 924(c) case, not a consecutive or a second and

9   successive 924(c) case, therefore a consecutive sentence for

10  the violation of supervised release at the high end or close

11  to the high end of that guideline range is appropriate to

12  reflect the fact that this crime was committed so shortly

13  after the exact same offense.  Even so, it is overall a

14  lenient set of sentences reflecting, in part, the mitigating

15  factors I already described.

16       And given particularly Mr. Sullivan's age, this

17  overall number does meet the purposes of providing

18  deterrence, general and specific, also protecting the public

19  from further crimes and providing just punishment.  I do

20  believe it is sufficient, but not greater than necessary, to

21  meet the purposes of sentencing.

22       So, with that I will issue the sentence.

23  Mr. Sullivan, if you could please stand.

24       In the case of United States versus Sullivan, the

25  Court sentences the defendant as follows.

On Count One, bank robbery, the Court sentences you to a term of imprisonment of 168 months to be followed by three years of supervised release.

On Count Four, interference with interstate commerce by robbery, the Court sentences you to a term of imprisonment of 168 months to be followed by three years of supervised release.

On Count Six, attempted interference with interstate commerce by robbery, the Court sentences you to a term of imprisonment of 168 months to be followed by three years of supervised release.

The terms of imprisonment and supervised release on these three counts will all run concurrently.

On Count Five, using, carrying, and brandishing a firearm during and in relation to a crime of violence, the Court sentences you to a term of imprisonment of 84 months to run consecutively to the sentences on Counts One, Four, and Six for a total term of imprisonment of 252 months.  The sentence on Count Five will include a five-year term of supervised release, which will run concurrently with the other terms of supervised release for a total term of supervised release of five years.

Now, on Violations Numbers 1, 2, and 3 of the petition for violation of supervised release, the Court sentences you to a term of imprisonment of 36 months on each

1  violation to run concurrently for a total sentence on

2  supervised release violations of 36 months.

3          That runs consecutively to the terms of

4  imprisonment on terms of Counts One, Four, Five, and Six.

5          I will impose no additional term of supervised

6  release on the violations.

7          So, overall the total sentences on the two cases

8  together is 288 months in total with five years of supervised

9  release.

10          I will impose no fine.

11          You are required to pay the special assessment of

12  $400.

13          In addition to the standard and statutory

14  conditions of supervised release, I will impose -- which,

15  first off, Mr. Lawlor, is there any reason why I need to

16  recite all the terms of supervised release, the standard and

17  statutory ones?

18          MR. LAWLOR:  No, Your Honor.

19          THE COURT:  In addition to those and the standard

20  and statutory conditions of supervised release, the Court

21  will impose the following special conditions:  First, that

22  you participate in a substance abuse treatment program and

23  follow the rules and regulations of that program.  And the

24  probation officer will supervise your participation in that

25  program.

1    You must submit to substance abuse testing to
2    determine if you used a prohibited substance.  And you must
3    not attempt to obstruct of tamper with the testing methods.
4    You must participate in a mental health treatment
5    program and follow the rules and regulations of that program.
6    And the probation officer, in consultation with the treatment
7    provider, will supervise your participation in that program.
8    You must pay the outstanding monetary restitution
9    at a rate of $150 per month to start 30 days after release
10   from imprisonment.
11   And you must pay the special assessment of $400.
12   As I just mentioned, there will be an order of
13   restitution included in the judgment of $30,894 payable at
14   the rate I just described.
15   I will enter the order of forfeiture and make it
16   part of the judgment.
17   I will recommend that the Bureau of Prisons place
18   you at the Federal Medical Center in Fort worth, Texas, or
19   the MCFB in Springfield, Missouri; or, failing that, the
20   FMC in Lexington, Kentucky.
21   I believe that completes the terms of the sentence.
22   Now, Mr. Sullivan, as you know, you were before our
23   Federal Court before.  You received a sentence of 13 months
24   for a similar type of crime.  You were on supervised release
25   during which you would not be allowed to commit crimes and

1   yet you completed this series of six armed robberies or

2   attempted robberies.

3            From your statement, I know you recognize these are

4   egregious offenses.  You placed innocent people in fear for

5   their lives and you actually assaulted and seriously injured

6   several.  So, while leniency may have been provided last

7   times or could have been provided last time, there is no easy

8   basis to impose it here given what has happened.

9            I understand that you have provided sincere

10  expressions of remorse.  And as you said, there's mental

11  health issues that you need to have sorted out and substance

12  abuse issues, as well.

13           But the reality is that given the series of

14  offenses immediately following the last time, the sentence

15  does have to be serious, as well.

16           And yet as you've heard, this is a lenient sentence

17  compared to some of the other things that could have happened

18  in this case.

19           Now, there are treatment programs, as you've heard,

20  both in the Bureau of Prisons and afterwards on supervised

21  release.  This was probably said last time and it didn't work

22  out.  But if you take advantage of these programs, you will

23  at least have an opportunity, when you are completing the

24  sentence, to come back to the community in a way that you can

25  live a productive and law-abiding life the rest of your time.

1   I certainly hope that you do that.  As you can tell, if you

2   don't, it's just more trips back to prison, and no one wants

3   that.

4          I do appreciate your statements about -- of remorse

5   regarding the victims; but as you may -- I don't know if

6   you've read them, but the victim impact statements show a

7   serious impact that's still ongoing for them.  And so because

8   of that, you do need to serve this sentence and hopefully

9   will try to atone for those crimes in whatever way you can in

10  the future.

11         With that, you may be seated.

12         Mr. Sullivan, you generally have the right to

13  appeal your conviction and sentence subject to any waivers

14  you may have made in the plea agreement.

15         If there's a basis to appeal and you wish to do so,

16  you must file a notice of appeal within 14 days of the entry

17  of judgment.  If you request, the clerk will prepare and file

18  a notice of appeal on your behalf.  And if you cannot afford

19  to pay the cost of an appeal or for appellate counsel, you

20  can apply to have the Court waive the filing fee and appoint

21  counsel to represent you on the appeal.

22         Are there any remaining counts or other issues to

23  deal with, Mr. Morgan?

24         MR. MORGAN:  Yes, Your Honor, there are.  Counts

25  Two, Three, and Seven, I believe, which the Government moves

1   to dismiss.

2           THE COURT:  Okay.  I'll grant that motion.  And

3   we'll accept the terms of the plea agreement regarding

4   dismissal of the counts.

5           Mr. Sullivan will be remanded back to the custody

6   of the marshal services.

7           Is there anything else we should discuss while

8   we're here today?

9           MR. LAWLOR:  No, Your Honor.

10          MR. MORGAN:  Thank you.

11          THE COURT:  Okay.  Thank you.  And thank you to

12  probation for being here.

13          DEFENDANT:  Have a good day, Your Honor.

14          THE CLERK:  All rise.  This honorable court now

15  stands adjourned.

16          (Court is adjourned at 4:42 p.m.)

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND


CERTIFICATE OF OFFICIAL REPORTER

I, Kathy Cortopassi, RDR, CRR, CRC, Federal Official
Court Reporter, in and for the United States District Court
for the District of Maryland, do hereby certify that pursuant
to Section 753, Title 28, United States Code, that the
foregoing is a true and correct transcript of the
stenographically reported proceedings held in the
above-entitled matter and that the transcript page format is
in conformance with the regulations of the Judicial
Conference of the United States.

Dated this the 15th day of November, 2023.


/s/ Kathy Cortopassi
Kathy Cortopassi, RDR, CRR, CRC
U.S. Official Court Reporter